F I L E D
United States Court of Appeals
Tenth Circuit

FEB 17 2000

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

MARCY SMOKE,

Plaintiff-Appellant,

v.

WAL-MART STORES, INC.,

Defendant-Appellee.

No. 98-1370
(D.C. No. 97-WM-396)
(D. Colo.)

ORDER AND JUDGMENT *

Before **HENRY** , **LUCERO** , and **MURPHY** , Circuit Judges.

Plaintiff-appellant Marcy Smoke appeals from the district court's order

granting summary judgment to defendant-appellee Wal-Mart Stores, Inc.

(Wal-Mart) on Smoke's complaint under the Americans with Disabilities Act,

42 U.S.C. §§ 12101-12213 (ADA).

Smoke began working for Wal-Mart in August 1989. She voluntarily

quit in January 1990 and was rehired in March 1991. She worked in the store's

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

receiving department from March 1991 until her termination on November 20, 1995.

In September 1995, Smoke began experiencing symptoms associated with depression. Her psychiatrist, Dr. Richard Gerson, diagnosed her with major depression on October 13, 1995. He prescribed Prozac for her. Smoke began taking Prozac and obtained psychotherapy from her therapist, Diane Glass.

At Glass's urging, in October or early November 1995, Smoke informed her supervisor, Wedad Abbot, that she was depressed and taking Prozac. Smoke asserts that although Abbot was sympathetic to her problems at first, Abbot soon began taking away Smoke's responsibilities.

Wal-Mart terminated Smoke's employment on November 20, 1995, alleging insubordinate behavior in connection with her failure to show up for work on the weekend of November 17 and 18, 1995. Smoke asserts, however, that Abbot gave her advanced permission to take the weekend off. She contends that Wal-Mart's asserted reasons for terminating her employment are a pretext for disability discrimination.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the

district court's grant of summary judgment de novo, applying the same standard it applied. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). This standard requires us to examine the record in order to determine whether any genuine issue of material fact is in dispute; if not, we determine whether the district court correctly applied the substantive law. See id. In doing so we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. See id. When the nonmovant will bear the burden of proof at trial on a dispositive issue, however, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence, as a triable issue, of an element essential to that party's case in order to survive summary judgment. See id.

## I.

Smoke phrases her first issue as follows: "[t]he defendant erred as a matter of law in arguing plaintiff had to prove an impairment of her ability to work in order to prove she was a qualified individual with a disability." Appellant's Br. at 9. The issue is inartfully stated. Our appellate function does not extend to correcting errors committed by litigants. Fortunately for Smoke, the body of her argument targets an alleged judicial error, which we can review.

Smoke claims that Wal-Mart predicated its motion for summary judgment on a faulty presumption: that a person must be substantially impaired in the

activity of working to be disabled within the meaning of the ADA. See Burch v. Coca-Cola Co. , 119 F.3d 305, 315 n.4 (5th Cir. 1997) (stating that a plaintiff asserting an ADA discrimination claim "need only show that a major life activity is substantially limited; there is no requirement that the individual also show that he is limited in the activity of working."), cert. denied , 118 S. Ct. 871 (1998). She argues the district court should have denied the motion based on this fallacious premise. Instead, she says, the district court sua sponte granted Wal-Mart summary judgment on a basis that Wal-Mart did not argue.

Our review of the record does not support Smoke's recital of events. Although the primary emphasis of Wal-Mart's summary judgment materials was Smoke's failure to demonstrate an impairment in the area of work, Wal-Mart did not limit its summary judgment attack to this narrow ground. In the brief in support of its motion for summary judgment, Wal-Mart argued that "Smoke's alleged depression did not interfere with any major life activity, including her ability to work[.]" Joint App. at 99 (emphasis added). Wal-Mart went on to argue:

> [A]n analysis of the ADA's definition of "disability" reveals "a physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. Sec. 12102(2)(A). In this regard, Plaintiff, beyond the conclusions found in her pleadings, which simply mirror the language of the ADA, has failed to identify any "major life activity" that has been "substantially limited" by her claimed depression. To the contrary, she has admitted in her deposition and in her Motion for Partial

Summary Judgment, that she does not suffer from     any such
limitations, much less as it relates to working.

Id. at 101 (footnote omitted).

Smoke did not fail to respond to this argument.  In her response brief,

she responded by directing the court to the affidavit of Dr. Dahlberg, her expert

witness psychiatrist,

> who avers that Plaintiff's major life activities of sleeping, thinking,
> interacting with others, and anxiety and depression [sic] are major
> life activities which have been substantially limited since before the
> time of Plaintiff's termination.  These limitations still exist and will
> substantially affect her for an indefinite period into the future.
> Plaintiff states in her own affidavit that her major life activities of
> sleeping and communicating with others have been substantially
> limited as a result of her Major Depression.

Id. at 154 (footnotes omitted).

Thus, Wal-Mart made the argument which ultimately proved dispositive:

that Smoke had failed to show that she was substantially limited in any major life

activity.  Moreover, Smoke cannot claim that she was surprised by the district

court's analysis, since she specifically argued against it in her response brief.

We therefore reject her first claim of error.


II.

Smoke next attacks the substance of the district court's decision:  that she

did not establish that she has a "disability" within the meaning of the ADA.  The

ADA prohibits discrimination "against a qualified individual with a disability

-5-

because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8). It further defines a "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

Id. § 12102(2).

"[W]hether a claimed affliction constitutes an impairment under the ADA and whether the identified endeavor constitutes a major life activity are determinations of law for the court to decide." Poindexter v. Atchison, Topeka & Santa Fe Ry., 168 F.3d 1228, 1230 (10th Cir. 1999). In making this determination, we consider the EEOC regulations which further refine the definition of disability. [2] Under the regulations, a "mental impairment" is defined

---

[2]     The Supreme Court has recently questioned whether these regulations are authorized by statute and whether they are entitled to deference. See Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2145 (1999). The parties do not dispute their persuasive force here, however, and so we operate on the assumption that the regulations are valid. See Murphy v. United Parcel Service, Inc., 119 S. Ct.

(continued...)

as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Smoke's major depression clearly qualifies as a mental impairment under these criteria.

We next ask whether this impairment substantially affects one or more of her major life activities. "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. § 1630.2(i). Smoke alleges substantial limitation in the major life activities of sleeping, thinking, interacting with others, and coping with anxiety and depression.

"Coping with anxiety and depression" does not qualify as a major life activity. An ability to cope with one's emotional states may be a necessary component of many major life activities, but it is not itself an "activity." Cf. Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir.) (rejecting, for similar reasons, claim that "concentration" is a major life activity), cert. denied, 120 S. Ct. 45 (1999). We have previously held, however, that sleeping is a major life activity. See id. We will further assume, arguendo, that thinking and interacting with others are major life activities. See McAlindin v. County of San Diego, No. 97-

[2](...continued)
2133, 2138 (1999).

-7-

56787, 2000 WL 29658, at *6 (9th Cir. Jan. 18, 2000) (holding that "interacting with others" is a major life activity); Soileau v. Guilford of Maine, Inc. , 105 F.3d 12, 15 (1st Cir. 1997) (expressing doubt whether "interacting with others" qualifies as a major life activity, but assuming for purposes of argument that it does).

> One is substantially limited in performing a major life activity when he is
>
> (i)  Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii)  Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

The regulations require consideration of several specific factors in making this determination.  These are "[t]he nature and severity of the impairment;" "[t]he duration or expected duration of the impairment;" and "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  Id. § 1630.2(j)(2)(i)-(iii).  The record contains the following evidence relating to the severity of Smoke's alleged impairments.

On September 27, 1995, an intake clerk at Kaiser Permanente completed a triage form for Smoke.  The clerk noted that her problem was an "emergency" and that she was suffering from depression and stress.  Smoke saw Diane Glass,

a psychotherapist, on October 10, 1995. At that time, she reported that she was sleeping from 8:30 a.m. until 3:00 p.m. after working the night shift at Wal-Mart. If the house was quiet, Smoke said she could sleep until 5:00 or 6:00. Glass diagnosed her with seasonal affective disorder. She arranged a psychiatric consultation for evaluation of anti-depressant medication.

Dr. Gerson, a psychiatrist, saw Smoke on October 13, 1995, and diagnosed her with major depression. He prescribed Prozac for her. In a diagnostic inventory he completed, he noted that Smoke had been feeling depressed for two months and had symptoms of middle insomnia. Smoke completed a checklist that day in which she indicated that her sleep was restless "[m]ost or all of the time." Joint App. at 78. She felt that people disliked her "[o]ccasionally or a moderate amount of time," but only felt people were unfriendly to her "[s]ome or a little of the time." Id. She reported "talking less than usual" only some or a little of the time. Id.

Smoke increased her Prozac level on October 20, 1995. On October 25, she was very upset and reported to Glass that her supervisor was taking away some of her duties and tampering with her routine. On October 27, Smoke told Glass that she had spoken to her supervisor and they resolved the situation. Smoke said she felt much better physically and emotionally, and felt much more in control of her life. She was concerned, however, that she still cried easily.

Wal-Mart fired Smoke on November 20, 1995. On November 29, 1995, Smoke reported to Glass that she was coping well with unemployment, was sleeping, was looking into resources for obtaining a new job, and felt that things would work out. By December 13, 1995, Smoke stated that she was feeling great, sleeping well, not feeling depressed, and not crying. She stated she wanted to discontinue therapy and wondered if she even needed to stay on an antidepressant.

On June 11, 1996, Smoke saw Dr. Gerson again. She stated the reason for the visit was "[j]ust staying where I am." Id. at 52. She stated that only "some or a little of the time" she had sleep disturbances or believed that people were unfriendly. Id. at 51. She felt that people disliked her "[r]arely or none of the time." Id.

Smoke filed an affidavit in this action, dated August 12, 1997. In it, she stated that when she contacted Kaiser Permanente on September 27, 1995, she "wasn't sleeping well" and was "irritated and very emotional all of the time." Id. at 33. Inconsistent with her medical records, she stated that after her termination from Wal-Mart she couldn't leave her house for weeks, "couldn't sleep" and "couldn't function." Id. at 35. She stated that she still didn't sleep very well, didn't communicate with other people very well, and did best on her own.

Dr. William Dahlberg, a psychiatrist, met with Smoke on July 24, 1997, and performed a psychiatric evaluation of her. He opined that she continued to suffer

from "very severe depression, severe anxiety, and sleep problems." Id. at 40. She had "almost no personal or emotional social life." Id. Dahlberg indicated that these problems "antedated her being fired from Wal-Mart, but were exacerbated by her termination." Id. He further opined that she had "substantial problems with thinking, interacting with others, sleeping, and anxiety and depression." Id. at 41. Contradicting this, however, he also reported that "[c]urrently she gets to bed at around 10:30 [p.m.] and sleeps fairly well . . . . She gets about six or eight hours of sleep per night on average." Id. at 45. He also stated that she could "accept supervision and relate to co-workers." Id. at 46. We begin by noting that the records generated after Smoke's termination are irrelevant, except to the extent that they reflect the nature of her impairment at the time Wal-Mart fired her. As Smoke correctly states, the district court could not rely on an improvement in her condition which occurred only after her termination. By the same token, however, information in affidavits about how Smoke was feeling in 1997 is irrelevant except to the extent that it sheds light on her condition as of October and November 1995.

Having reviewed the evidence, we conclude that Smoke fails to show that she was substantially limited in the major life activity of sleeping during the relevant time period. There is simply no way to determine from her generalized allegations of sleep disturbance whether she was significantly restricted as to the

condition, manner or duration of her ability to sleep as compared to the average person in the general population.    See 29 C.F.R. § 1630.2(j)(1)(i) & (ii).  There is less specific evidence here of a substantial limitation in sleeping than in the Pack case, in which this court held the evidence insufficient.    See Pack, 166 F.3d at 1306.

Smoke's comment that her sleep was "restless" and her doctor's comment that she suffered from "middle insomnia" are insufficiently specific to satisfy the ADA criteria.  Sleeping difficulties are extremely widespread among the nation's adult population; generalized complaints about a "a tough night's sleep" have therefore been found insufficient to establish a substantial limitation. See Colwell v. Suffolk County Police Dep't    , 158 F.3d 635, 644 (2d Cir. 1998), cert. denied , 119 S. Ct. 1253 (1999).

Dr. Dahlberg's affidavit and report are somewhat more specific; he claimed that she had substantial problems with sleeping.  Unfortunately, he failed to tie this comment to the specific time period relevant to this case.  In fact, he commented that Smoke's problems with sleep and social life only "somewhat antedated her being fired by Wal-Mart" but were "exacerbated by her inappropriate dismissal."  Joint App. at 42.  There is no way to determine from Dr. Dahlberg's affidavit and report how bad Smoke's sleeping problems were at the time of her termination.

Finally, although Smoke does not claim to be impaired in the major life activity of work, the evidence concerning her work performance does cast light on her claim to be substantially impaired in the major life activities of sleeping and thinking. In spite of her allegation of severe difficulties in sleeping and thinking, she makes no claim that she was afflicted with drowsiness or fatigue on the job due to sleep deprivation or that she had thinking problems that hindered her ability to perform her job. Her supervisor, Wedad Abbott, testified that her job performance was fine right up to the time she was fired. See id. at 93. While we certainly do not view this factor as dispositive, it supplies further evidence that her impairment was not substantially limiting. See Olson v. General Elec. Astrospace, 101 F.3d 947, 953 (3d Cir. 1996) (noting "the evidence that was apparently offered to demonstrate [plaintiff]'s fitness as an employee ironically establishes that he was not substantially limited in a major life activity.").

The evidence that Smoke was substantially impaired in the major life activities of thinking or getting along with others is even less specific than the evidence with regard to her ability to sleep. We conclude she failed to show that she was substantially limited in a major life activity when Wal-Mart fired her. [3]

---

[3] Smoke does not argue on appeal that she was disabled because she had "a record of such an impairment" or because she was "regarded as having such an impairment." 42 U.S.C. § 12102(2). Accordingly, we do not consider these alternative bases for finding disability under the ADA.

The judgment of the United States District Court for the District of Colorado is AFFIRMED. Smoke's motion to stay proceedings is DENIED as moot.

Entered for the Court


Michael R. Murphy
Circuit Judge